IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOSHUA RICHBURG,<br>     Plaintiff,<br><br>     v.<br><br>WARDEN LEEPOSEY DANIELS, *et al.*,<br><br>     Defendants. | )<br>)<br>)<br>)  CIVIL ACTION NO.:  2:12-CV-803-TFM<br>)                          [WO]<br>)<br>)<br>) |

**MEMORANDUM OPINION**

In this 42 U.S.C. § 1983 action, Plaintiff, a state inmate incarcerated at the Elmore Correctional Facility in Elmore, Alabama, when he filed this action, alleges that he contracted Tuberculosis ["TB"] while in the care and custody of Defendants.[1] Name as defendants are Warden Leeposey Daniels, Warden Leon Bolling, and Captain Charles McKee. Plaintiff seeks damages for pain, suffering, and negligence.[2]

In accordance with the orders of the court, Defendants filed an answer, special report, and supporting evidentiary material in response to the allegations in the complaint. *Doc. Nos. 17, 18.* The court then informed Plaintiff that Defendants' special report  may, at any time, be treated as a motion for summary judgment, and the court explained to Plaintiff the proper manner in which to respond to a motion for summary judgment. *Doc. No. 19.* Plaintiff took advantage of the opportunity granted to file a response to the special report filed by Defendant. *Doc. Nos. 24, 26.* This case is now pending on Defendants' motion for summary judgment.  Upon consideration of the motion, the evidentiary materials filed in support thereof, and Plaintiff's

---

[1] Since filing this action Plaintiff has been released from custody.

[2] In accordance with the prior orders of the court, this action is proceeding on Plaintiff's amended complaint (*Doc. No. 8*) and supplement thereto. *Doc. No. 10.*

1

Plaintiff's opposition to the motion, the court concludes that Defendants' motion for summary judgment shall be granted.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (moving party has initial burden of showing there is no genuine dispute of material fact for trial).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the nonmoving party has failed to present evidence to support some element on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-324.

Defendants have met their evidentiary burden. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to

2

properly address another party's assertion of fact as required [by citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007).

> In civil actions filed by inmates, federal courts must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. Consequently, to survive Defendants' properly supported motions for summary judgment, Plaintiff must produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims for relief. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of*

3

*Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (internal citations omitted).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs likewise cannot create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond his own conclusory allegations challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 323 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the *prima facie* case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citations omitted).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and establishes the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.);  *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. Here, Plaintiff has failed to demonstrate a requisite genuine dispute of material fact against Defendants to preclude summary judgment. *Matsushita*, *supra*.

## II. DISCUSSION

*A. Negligence*

Plaintiff asserts that Defendants acted negligently in failing to control an outbreak of TB. The law is well settled that the Constitution is not implicated by negligent acts of prison officials. *Daniels v. Williams*, 474 U.S. 327 (1986); *Mandel v. Doe*, 888 F.2d 783,787-788 (11th Cir. 1989) (mere negligence insufficient to establish constitutional violation); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986) (protections of the Constitution "are just not triggered by lack of due care by prison officials."); *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995) (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1191 n. 28 (11th Cir.1994) (acknowledging that Supreme Court has required more than mere negligence to obtain relief under § 1983). Consequently, the alleged negligent conduct about which Plaintiff complains does not rise to the level of a constitutional violation and provide no basis for relief in this 42 U.S.C. § 1983 action.

*B. Deliberate Indifference*[3]

Plaintiff complains that he was subjected to cruel and unusual punishment when, through no fault of his own, he contracted TB while in the custody and care of the Alabama Department of Corrections ["ADOC"].[4] He maintains that the ADOC was unable to maintain an "infectious disease outbreak" which began in November 2011 and claims TB medication is "highly toxic."[5] *Doc. No. 8* at 2-3, *Doc. No. 10* at 2-3**.**

The court understands Plaintiff to allege that Defendants exhibited deliberate indifferent to his health and safety by failing to control a TB outbreak at the Elmore Correctional Facility causing him to contract the disease. The court's analysis of whether Plaintiff has stated an Eighth Amendment claim has two components. "First, the deprivation alleged must be, objectively, 'sufficiently serious[;]' a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities [.]' " *Farmer v. Brennan*, 511 U.S. 825, 834

---

[3] *To the extent Plaintiff presents additional claims and/or theories of liability in his opposition to Defendants' special report, the court limits its review to the allegations set forth in the amended complaint and amendment thereto. Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."); *Ganstine v. Secretary, Florida Dept. of Corrections*, 502 Fed. App'x 905, 909-910 (11th Cir. 2012) (plaintiff may not amend complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton County School District*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (district court correctly refused to address a new theory raised during summary judgment because the plaintiff had not properly amended the complaint).

[4] *See generally Metheney v. Anderson*, 953 F. Supp. 854, 855 (N.D. Ohio 1996) ("Tuberculosis is a communicable disease that generally affects the lungs, but also appears in other organs of the body. It is transmitted by the tubercle bacilli that are present in the lungs of infected individuals and are expelled by talking, coughing or sneezing. Tuberculosis exists in both dormant [latent] and active stages. During the dormant stage, the individual is not infectious and exhibits no symptoms. Only a few infected individuals develop active tuberculosis. With proper treatment—daily dosages of the antibiotic isoniazid for six to twelve months—an infected person probably will never develop active tuberculosis.").

[5] Due to deficiencies in Plaintiff's original complaint, the court directed him to file an amended complaint which (1) named as defendants the individuals personally responsible for the alleged denial of his constitutional rights with respect to the subject matter of his complaint, (2) identified specific claims relative to actions taken against him by the person named as a defendant; and (3) described with particular detail how the individuals named as a defendants acted in violation of his constitutional rights. *See Doc. No. 7*. Because Plaintiff's amended complaint failed to identify any individual allegedly responsible for the constitutional violations about which he complained, the court directed Plaintiff to supplement his amended complaint to correct this deficiency and again advised him to describe with particular detail how the individuals named as defendants acted in violation of his constitutional rights. *See Doc. Nos.8, 9*. Plaintiff's supplemental complaint provided the identity of the persons against whom he sought to file this action and appears to generally ascribe the conduct or actions about which he complains to each named defendant. *See Doc. No. 10*. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir.1998) (*per curiam*) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.").

(1994) (internal citations omitted). For a claim, like the instant one, based upon a failure to adequately control the spread of a contagious disease, Plaintiff must present factual allegations which show he was incarcerated under conditions posing a substantial risk of serious damage to his health. *Helling v. McKinney*, 509 U.S. 25, 35 (1993). The second component of Plaintiff's Eighth Amendment claim is that the "prison official must have a 'sufficiently culpable state of mind[,]' " *Farmer*, 511 U .S. at 834 (citations omitted), since " 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.' " *Id*. (citation omitted). In conditions-of-confinement cases "that state of mind is one of 'deliberate indifference' to inmate health or safety[.]" *Id*. (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety.... It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a ' "sufficiently culpable state of mind." ' " *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

8

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). "The known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotations omitted). Thus, "[m]erely negligent failure to protect an inmate ... does not justify liability under section 1983...." *Id*.

Under the aforementioned criteria, Plaintiff is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation[]" in order to survive summary judgment on his deliberate indifference claim against the defendants. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995); *Farmer*, 511 U.S. at 837-838 (To circumvent entry of summary judgment on a properly supported motion, plaintiff must produce sufficient evidence which demonstrates (1) an objectively substantial risk of serious harm; (2) a subjective awareness of this risk by the defendants; (3) the defendants responded to such risk in an objectively unreasonable manner; and (4) the actions/omissions of the defendants caused his injuries); *Marsh*, 268 F.3d at 1028-1029 (same); *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1191 n.28 (11th Cir.1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (recognizing that the Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (holding that for liability to attach, defendant must know of and then disregard an excessive risk to prisoner's health or safety); *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir.1999) (stating "deliberate indifference" is a synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate

nature can be inferred). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837. Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838.

Defendants deny that they acted in violation of Plaintiff's constitutional rights. *See Doc. No. 17, Daniels, Bolling, and McKee Affidavits*. Defendants provided the affidavit of Dr. Dyjerlynn Lampley-Copeland, Medical Director and Site Physician for Staton Correctional Facility. She also provides medical attention and treatment to inmates incarcerated at the Elmore Correctional Facility. Dr. Lampley-Copeland addressed the claims presented by Plaintiff, in relevant part, as follows:

> 11. In his Complaint, Mr. Richburg specifically disputes the method of treatment prescribed for his Tuberculosis ("TB"). TB is an infection with the bacterium *Myobacterium tuberculosis*, which most commonly affects the lungs, but can also affect the central nervous system, lymphatic system, circulatory system, bones and joints. There are two (2) types of TB: latent TB (positive skin test with no symptoms) and active TB. The fundamental difference between latent TB and active TB is that active TB is contagious and latent TB is not.
>
> 12. The standard method for identifying a TB infection involves a simple skin test. The medical staff at Elmore performs the TB skin test by injecting tuberculin into the inner surface of the inmate's forearm. Tuberculin is a mix of purified proteins produced from dead TB bacteria which means the administration of a TB skin test will not infect an individual with TB or any other disease or virus. After the medical staff administers a TB skin test, the staff "reads" the injection site 48-72 hours later to determine if the TB skin test is positive or negative. If an inmate has been exposed to the TB bacteria, the inmate will have a reddened induration, or occasional blistering, on the forearm where the test was given. Whether a test is considered positive depends on the inmate's risk factors. For example, a reaction resulting in a raised area of five (5) millimeters or more is generally considered a positive test for an HIV-infected inmate or an inmate

10

whose immune system is suppressed. A reaction often (10) or more millimeters is considered a positive test in all inmates regardless of the inmate's risk factors.

      13. The medical staff follows this same procedure regardless of whether the inmate claims he tested positive in the past. This is because the medical staff must verify whether an inmate has been exposed to TB before releasing the inmate to the general population where he may expose other inmates. It is also not sufficient to perform a chest x-ray in place of a TB skin test because a chest x-ray generally only shows whether the inmate has active TB. The TB skin test, on the other hand, tests for exposure to TB, whether latent or active. Although latent TB is not contagious, it is important to know when an inmate is infected because it can lay dormant for years and become active at any time. When latent TB becomes active, it can take three or more weeks for the inmate to exhibit any signs or symptoms of the infection. During this time, the inmate may spread the infection to anyone around him. This can lead to an outbreak of TB among the entire prison population and the staff. Therefore, the medical staff at Elmore, like the medical staff at the other ADOC facilities, typically administers preventative TB treatment to all inmates with latent TB to prevent it from becoming active. The medical staff at Elmore generally treats inmates with latent TB with Isoniazid (INH) for a minimum of nine (9) months.

      14. If an inmate with latent TB states that he has already received treatment, the medical staff treats the inmate with INH until they can confirm that the inmate received and completed his previous treatment. If the medical staff cannot confirm that the inmate received and completed treatment, it will continue to administer the TB treatment to completion. If the medical staff confirms that the inmate received and completed treatment, the medical staff will immediately terminate the inmate's treatment regimen.

      15. As indicated through the medical records pertaining to Mr. Richburg, we provided Mr. Richburg with treatment for TB for the sole purpose of ensuring that he did not develop active TB, thereby creating a health hazard for the other inmates at Elmore. Mr. Richburg arrived at Elmore in May of 2011. (ADOC003, 8-10). Though Mr. Richburg tested negative for latent TB on May 28, 2011, he subsequently tested positive for latent TB on July 25, 2012. (ADOC003, 6). Pursuant to long-standing treatment protocols and widely-accepted practices within the medical community in Alabama, Mr. Richburg immediately underwent a full physical examination and imaging studies to ensure that he had not developed active TB and he received a prescription for the medication Isoniazid (INH). (ADOC007, 12). Throughout the course of his treatment for latent TB, the medical staff monitored Mr. Richburg's condition through the chronic care clinic process described above until he completed his treatment in December of 2012. (ADOCO15-18). In my medical judgment, I cannot find any rational or logical basis upon which any physician would not have provided Mr. Richburg with this treatment.

16. There is no evidence of any kind that Mr. Richburg experienced any complications or adverse side effects as a result of the treatments he received for his latent TB condition. While I understand that Mr. Richburg did not wish to receive the INH therapy, an individual's exposure to TB within any type of closed environment, such as a prison or nursing home, is not uncommon and is often an unavoidable by-product of individuals living together within a confined space. Therefore, Mr. Richburg's exposure to TB was not an uncommon or unusual occurrence, but a common occurrence within a prison setting that cannot be ignored by the Elmore medical staff.

17. In sum, I do not believe that the course of treatment provided to Mr. Richburg or the overall level of care and medical attention provided by the medical staff at Elmore to the inmate population has been inappropriate in any way. Likewise, I am not aware of any additional medical treatment of any kind that should have been provided to Mr. Richburg. I have not denied and am not aware of any other member of the medical staff at Elmore who denied Mr. Richburg any necessary medical treatment or ignored any of his complaints. In fact, until the filing of this lawsuit by Mr. Richburg, I was not aware of his complaints or concerns, which he has not raised with me during my interactions with him. The members of the medical staff have examined Mr. Richburg on a regular basis and have provided the appropriate level and degree of evaluation, consultation, treatment and medications.

*Doc. No. 17*, *Lampley-Copeland Affidavit, Exh. 1, Plaintiff's Medical Records*.

The evidentiary materials filed by Defendants address the allegations made by Plaintiff regarding his positive test for TB. A thorough review of these documents demonstrates that the affidavits submitted by Defendants are corroborated by the objective records contemporaneously compiled with the screening of Plaintiff and during the treatment provided to him after his initial skin test showed a positive reaction for exposure to tuberculosis. *Doc. No. 17, Exh. 1, Plaintiff's Medical Records*.

Defendants' undisputed evidence reflects that precautionary measures were taken in accordance with the guidelines established by the contract medical provider to: (i) identify inmates with tuberculosis upon initial intake into the prison system and at yearly intervals during their incarceration, (ii) determine whether symptomatic inmates had contracted tuberculosis, (iii)

protect the inmate population from possible exposure to potential infectious diseases, including tuberculosis, and (iv) ascertain whether inmates who came into contact with active tuberculosis had been exposed to the tuberculosis bacteria. *Doc. No. 17, Lampley-Copeland Affidavit*. The record is devoid of evidence that Defendants knew of specific facts from which an inference could be drawn that a substantial risk of harm existed to Plaintiff, that they actually drew this inference and thereafter ignored the risk. Plaintiff has not presented evidence which indicates Defendants knew that the manner in which they housed inmates or the that the medical screening procedures or treatment provided to inmates, including Plaintiff, created a substantial risk to his health and that with this knowledge consciously disregarded such risk. Plaintiff has, therefore, failed to establish the requisite element of subjective awareness by Defendants. Defendants are entitled to summary judgment. *Carter*, 352 F.3d at 1350.

      A separate order follows.

      Done, this 20th day of August 2015.

                                      /s/Terry F. Moorer
                                      TERRY F. MOORER
                                      UNITED STATES MAGISTRATE JUDGE